GUST FREDERICKSON, Administrator of the Estate of NUB
    FREDERICKSON, deceased, v. IOWA CENTRAL RAILWAY
    COMPANY, Appellant.

Railroads: EVIDENCE: CONCLUSION: PREJUDICE. Where there was
1    evidence in a railroad crossing accident warranting a conclusion
    that a certain engine was the one which struck deceased, and
    there was no attempt to show it was not the engine, the testi-
    mony of a witness that he examined an engine of defendant's
    in the yards and that it came over the route of the accident on
    that day, while in the nature of a conclusion was not so preju-
    dicial as to require a reversal.

Same: CROSSING ACCIDENT: NEGLIGENCE: EVIDENCE OF CUSTOM. Evi-
2    dence of the general custom and habit of a decedent, as to his
    exercise of care on approaching a certain railway crossing, is
    competent in aid of the presumption that he was in the exercise
    of due care, there being no eye witness to the accident.

Same: CONTRIBUTORY NEGLIGENCE: SUBMISSION OF ISSUE. Although
3    a railway crossing is so open that the approach of trains can
    readily be seen under ordinary circumstances and an exercise
    of ordinary care, still where there was a high wind and flying
    snow at the time of the accident, sufficient at times to largely
    obscure the vision, when taken in connection with the presump-
    tion of due care and the evidence of decedent's usual care on
    approaching the crossing, the question of contributory negligence
    was properly left to the jury.

Same: DUTY TO STOP, LOOK AND LISTEN. One is not required by
4    law to stop, look and listen for approaching trains under all
    circumstances when about to cross a railway track, but this duty
    is governed by the existing conditions; and where the weather
    conditions were such that had deceased done so it might have
    been of no avail, his failure to exercise such a degree of care
    was not negligence as matter of law.

Damages: DISREGARD OF INSTRUCTION: PRESUMPTION. It will not be
5    presumed that a direction to the jury to allow the fair reason-
    able value of property destroyed, as shown by the evidence, was
    disregarded by an allowance for property of which there was
    no evidence of value.

*Appeal from Worth District Court.—*HON. J. F. CLYDE,
Judge.

FRIDAY, MARCH 15, 1912.

ACTION to recover damages for the wrongful killing
of plaintiff's intestate and to recover the value of certain
personal property destroyed at the same time. A trial to
a jury resulted in a verdict and judgment for the plaintiff.
The defendant appeals.—*Affirmed.*

*W. H. Bremner, F. M. Miner,* and *Kepler & West-
fall* (*Geo. W. Seevers,* of counsel), for appellant.

*E. M. Sabin* for appellee.

SHERWIN, J.—Plaintiff's intestate was killed by a
train on a highway crossing, intersecting a railroad track
and about two miles north of Northwood, Iowa, over which
both the defendant and the Chicago, Rock Island & Pacific
Railroad Company operate trains. The evidence, fairly
shows that the deceased started from Northwood for home
between two and half past two o'clock in the afternoon,
driving a single horse hitched to a sleigh. No witness
who testified on the trial saw the accident; but a witness
for the plaintiff, who lived near the crossing, found
Frederickson fatally injured a short distance northwest of
the crossing shortly after three o'clock. Frederickson was
so badly hurt that he was unable to give any account of
the accident, and he died within an hour after he was
found. The horse that he had been driving was found
dead and mangled some distance north of the crossing. His
sleigh was broken, and flour and other groceries that he
had bought in Northwood were found in the vicinity. It
is conclusively shown that deceased was killed by a north-
bound train. The only trains going north on the afternoon

in question, so far as the record shows, were a Rock Island passenger train, which passed Northwood before 2 o'clock, and a passenger train of the defendant, which was due to leave there at 2:32, and which did, in fact, leave Northwood about on time that afternoon. There was evidence tending to show that the engine that pulled the defendant's train in question into Albert Lea, Minn., that afternoon, bore unmistakable evidence of having been in collision with a horse, and with flour and other groceries, such as the deceased carried in his sleigh. We therefore think the evidence sufficient to warrant the finding that it was the defendant's train that killed plaintiff's intestate. Defendant was charged with a failure to give warning of its approach, and there was sufficient evidence to take that question to the jury.

A witness, residing in Albert Lea, Minn., testified over the defendant's objection that the question called for a conclusion that he "examined an Iowa Central engine that came north that day," and that it was No. 46. The witness was a policeman of Albert Lea, and testified that he saw the engine in the evening over toward the roundhouse, and that it was the only Iowa Central engine outside of the roundhouse. He did not testify that it was the engine that took the train in question into Albert Lea that afternoon, but from his testimony as to the condition of the engine, together with the other evidence, the jury was justified in concluding that it was the same engine that struck deceased. There was no evidence attempting to show that No. 46 was not the engine that pulled that particular train into Albert Lea, and while the answer of the witness was in the nature of a conclusion, we do not think it was so prejudicial to the defendant as to require a reversal.

1. RAILROADS: evidence: conclusion: prejudice.

A son of the deceased testified that he had ridden with his father over the crossing in question some twenty times or more during the five years immediately preceding

the accident, that he knew his father's habit and custom

2. SAME: cross-
ing accident:
negligence:
evidence of
custom.

about looking and listening for trains, and that he was in the habit of stopping and looking and listening. Proper objection was made to this testimony and appellant now contends that it was error to receive it, because the habits and usual conduct as to a particular act are not admissible on the question of contributory negligence and because the witness had not shown sufficient familiarity with the habits of the deceased. The deceased was alone at the time he was killed, and, so far as the record discloses, no one witnessed the accident. In such cases, the presumption obtains that the deceased was exercising due care in approaching the crossing. This presumption is not conclusive, but is to be considered with the other evidence. In *Dalton v. Railroad Company*, 114 Iowa, 259, and in *Gray v. Railway Company*, 143 Iowa, 268, we intimated that cases might arise where it would be competent to show the general habit and conduct in such cases as bearing indirectly upon the question of contributory negligence. The general objection to such evidence is that it is too remote, and that a man may be generally careful in doing a particular thing and still be careless in the instance in question. But we are of the opinion that evidence of the general habit in using a particular railroad crossing is competent, at least where there are no eyewitnesses of the accident. It may tend to aid the presumption of self-preservation that arises in such cases, because a person is more likely to do what he is in the habit of doing under the same conditions. Such evidence is held admissible in New Hampshire; *Tucker v. Boston & M. R. R.*, 73 N. H. 132 (59 Atl. 943); *Davis v. Railroad*, 68 N. H. 247 (44 Atl. 388), and cases therein cited; and in Illinois, *Railroad Company v. Clark*, 108 Ill. 113; *Railroad Co. v. Bailey*, 145 Ill. 159 (33 N. E. 1089). The following cases also support the rule: *Railway Co. v. McNeil* (Ind. App.) 66 N. E. 777; *Rail-*

*road Co. v. Spilker,* 134 Ind. 380 (33 N. E. 280, 34 N. E. 218); *Craven v. Railroad Co.,* 72 Cal. 345 (13 Pac. 878); *Fitzpatrick v. Railroad Co.,* 128 Mass. 13; 1 Wigmore on Evidence, sections 92, 93; *Mathias v. O'Neill,* 94 Mo. 520 (6 S. W. 253). As bearing somewhat on the same question, see *Slossen v. Railroad Co.,* 60 Iowa, 215; *Lanning v. Railroad Co.,* 68 Iowa, 502; *Johnson v. Railroad Co.,* 77 Iowa, 666; *Shaber v. Railway Co.,* 28 Minn. 103 (9 N. W. 575); *Smith v. Clark & Whitling,* 12 Iowa, 32; *Stafford v. Oskaloosa,* 64 Iowa, 251.

It is said that the court should have held, as a matter of law, that deceased was guilty of contributory negligence; but we can not assent to the proposition. While the crossing in question was so open that the approach of a train could have readily been seen by the exercise of care, under ordinary circumstances, the record shows that on the afternoon in question the wind was high and at times the air was so full of drifting snow that a person could not see far. What precaution the deceased may have taken when approaching this crossing can not be certainly determined. But he had used it frequently for many years and knew that it was dangerous to attempt to cross the track without exercising care, and the presumption that we have already referred to, in connection with evidence of the conditions of the weather at the time, was, we think, sufficient to take the case to the jury. *Lorentz v. Railway Co.,* 115 Iowa, 377; *Funston v. Railway Co.,* 61 Iowa, 452.

*3. SAME: contributory negligence: submission of issue.*

Instruction 10 is complained of, on the ground that no fact or circumstance was shown which would serve to excuse "the failure of the deceased to look and listen for an approaching train." But the appellant is mistaken as to this. The deceased may have stopped and looked and listened, and still have been unable to see or hear the train on account of the weather conditions shown. Nor is a person approaching

*4. SAME: duty to stop, look and listen.*

a railway crossing required by the law to stop, look and listen under all conditions. Such duty is always dependent upon the conditions existing at the time. See cases immediately *supra*. There was no error in the instruction.

Instruction 12 is criticised because the jury was told that, if it found for the plaintiff on his claim for damages to the horse, sleigh, and other personal property, the fair and reasonable value of such property, as shown by the evidence, should be allowed.

5. DAMAGES: disregard of instruction: presumption.

It is said that there was no evidence as to the value of the groceries that were destroyed by the collision, and hence the instruction was erroneous. If appellant's contention be true, the jury could not have allowed anything therefore under the instruction without disregarding it, and this we will not presume. It is a very small matter, involving but a few dollars at most, and we see no reason for modifying the judgment on account thereof.

We find no error for which the judgment should be disturbed, and it is *affirmed*.